IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NANCY FLYNN | § | |
| | § | |
| V. | § | A-16-CV-667-LY |
| | § | |
| THE NORTHERN TRUST COMPANY | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant The Northern Trust Company's Motion for Summary Judgment filed on July 21, 2017 (Dkt. No. 29); Plaintiff's Response to Defendant's Motion for Summary Judgment, filed on August 4, 2017 (Dkt. No. 31); and Defendant's Reply, filed on September 27, 2017 (Dkt. No. 39). On August 14, 2017, the District Court referred the-above Motion to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules.

**I.  GENERAL BACKGROUND**

From 1999 until August 2012, Nancy Flynn ("Flynn") worked in The Northern Trust Company's ("NTC") Houston office as a Trust Administrator and also served as an officer and a Vice-President. In August 2012, Flynn applied for a transfer to NTC's Austin office as a Trust Administrator because she and her husband wanted to relocate to Austin. NTC denied the transfer request citing its concern that Flynn would not be able to service her trust clients from the Austin office. Still seeking a transfer to Austin, Flynn next applied for the position of Associate Personal Investment Portfolio Manager ("APIPM") in the Austin office, a position that carried a lower title and a lower salary than her previous position in Houston. NTC approved

Flynn's second transfer request and on September 24, 2012, Flynn began working in the Austin office in the position of APIPM. In addition to working as an APIPM, Flynn continued to serve as the Trust Administrator for a number of trust accounts and was a member of NTC's Western Region Client Support Services ("CSS") team, which provided state-wide support for investment portfolio managers. Flynn was the only female Senior Investment Associate on her CSS team.

At the end of 2012, NTC hired Greg Yokum as the Portfolio Manager for the Austin office. Shortly thereafter, Flynn contends that Yokum began to make inappropriate sexist comments to her such as that he was used to working with females who referred to him as their "work husband" and that they "took care" of him, unlike Flynn. Exh. 1 to Dkt. No.31 at 76. Flynn also contends that Yokum treated her differently than her male counterparts such as changing her deadlines and threatening that she would be terminated if she did not meet those deadlines. Flynn alleges that she complained to NTC Texas President Jeff Early some time in early 2013 about Flynn's allegedly discriminatory comments but that Early just told her to "work with him as best I could." *Id.* at 76-77. Flynn contends that in January 2014, Yokum angrily charged at her while she was sitting at her desk and that she was afraid he was going to hit her. *Id.* at 91, 106-07. Immediately thereafter, Flynn complained about these incidents to her supervisor, Karene Arkaifie, who in turn reported the matter to human resources ("HR"). After conducting an investigation—which Flynn contends was inadequate—HR concluded that both Flynn and Yokum were at fault.

Flynn contends that after she filed the internal discrimination complaint against Yokum, her supervisors began to retaliate against her. Specifically, on February 7, 2014, Flynn received a negative annual performance review from Arkaifie and was placed on a Performance

Improvement Plan. Arkaifie also gave Flynn a written warning instructing her not to be too emotional in the workplace. Arkaifie did grant Flynn's request to be moved to a different desk further away from Yokum.

On February 18, 2014, Flynn was informed that she would have to start performing backup teller duties. Flynn complained to Arkaifie that she had concerns about working as a backup teller while also performing as a Trust Administrator and APIPM. In addition, Flynn complained to Arkaifie that she was assigned to the teller backup duties because she was a woman. In late April, Arkaifie informed Flynn that she would no longer have to perform backup teller duties. However, while Arkaifie was out on medical leave, Arkaifie's supervisor, Frank Chavez, called Flynn and told her that she would have to perform backup teller duties and warned her that there would be repercussions if she refused to do so. Chavez also told Flynn not to contact Arkaifie about the matter.

On June 4, 2014, after discovering that Flynn had contacted Arkaifie while she was on leave and had complained about the backup teller duties, Chavez issued Flynn a written warning and placed her on a performance improvement plan. Chavez also warned her that if she did meet the expectations of the improvement plan she could be terminated. Flynn contends that on June 17, 2017, Chavez and Arkaifie called Flynn and told her that she had to perform the back up teller duties and be a "team player" or she would be terminated. Chavez also informed her that she would no longer be permitted to work at home on Fridays. The next day, on June 18, 2017, Flynn submitted her resignation. Flynn contends that because she was "[f]acing the choice of imminent termination or performing duties she believed were highly improper and that violated policy and banking regulations," she had no choice but to resign, and thus her resignation was

3

a constructive discharge. Dkt. No. 31 at 5. Notablty, NTC hired a male to replace Flynn, and he was not required to perform teller duties.

On June 8, 2016, Flynn filed this lawsuit against NTC alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and Chapter 21 of the Texas Labor Code, as amended, TEX. LABOR CODE § 21.001 *et seq*. NTC moves for summary judgment on all of Flynn's claims.

## II. STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere

4

conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III. ANALYSIS

**A.    Flynn's Sex Discrimination Claim**

1.    Direct and Circumstantial Evidence

Title VII prohibits an employer from discriminating "against any individual with respect to her compensation, *terms, conditions, or privileges of employment*, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). A plaintiff may prove Title VII discrimination through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If a plaintiff presents direct evidence of discriminatory intent, then she is entitled to bypass the familiar analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Turner v. Kansas City So. Ry. Co.,* 675 F.3d 887, n. 3 (5th Cir. 2012). In such a case, the burden then shifts to the employer to establish, by a preponderance of the evidence, that the same decision would have been made, regardless of the discriminatory intent. *Brown v. E. Mississippi Elec. Power Ass'n*, 989 F.2d

5

858, 861 (5th Cir. 1993). Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003). It includes "any statement or document which shows on its face that an improper criterion served as a basis–not necessarily the sole basis, but a basis–for the adverse employment action." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) (emphasis added), *overruled on other grounds* by *Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010).

A claim based on circumstantial evidence, on the other hand, is evaluated under the burden-shifting framework that is typically applied in employment discrimination cases. Under the *McDonnell Douglas* analysis, a plaintiff is entitled to a "presumption of discrimination" if she can meet the "minimal initial burden" of establish[ing] a prima facie case that the defendant made an employment decision that was motivated by a protected factor." *Id.* A plaintiff articulates a prima facie case of discrimination when she shows that: 1) she is a member of a protected group; 2) she was qualified for the position at issue; 3) she suffered an adverse employment action; and 4) she was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). After the plaintiff establishes his *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). If the defendant meets this burden, the burden shifts back to the plaintiff to show that (1) the defendant's proffered reason is not only untrue, but is pretextual; or (2) the defendant's proffered reason is true, but is only one of the reasons, with the protected characteristic being a "motivating factor." *Id.* Finally, if the plaintiff succeeds, the burden shifts back to the defendant to prove "it

would have taken the same action in the absence of the impermissible motivating factor." *Id*. at 312–13.

   2.   Flynn's Direct Evidence

Flynn alleges that NTC discriminated against her because of her gender by treating her differently because she is a woman, forcing her to perform entry-level teller duties and ultimately in constructively discharging her. NTC argues that Flynn has failed to make out a prima facie case of discrimination because she has failed to demonstrate that she suffered an adverse employment action. Specifically, NTC argues that assigning Flynn backup teller duties cannot constitute an adverse employment action. Similarly, NTC argues that she cannot show that she suffered an adverse employment action in the form of a constructive discharge. Thus, NTC argues that it is entitled to summary judgment since Flynn has failed to make out a prima facie case of sex discrimination.

NTC's prima facie argument fails because "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). *See also, Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (rejecting defendant's argument that plaintiff failed to make out a prima facie case finding that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."); *Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 782 (5th Cir. 2015) ("If direct evidence of discrimination exists, no further evidence is required."). In this case, the Court need not delve into an analysis of the prima facie case, as Flynn has presented direct evidence of sex discrimination. Specifically, Flynn's direct supervisor, Karen Arkaifie, agreed with Flynn during a telephone conversation that NTC only assigned Flynn teller duties because she

is a woman. See Exh. 3 to Dkt. No. 31 at ¶ 16; Exh. 11 to Dkt. No. 31 at 45-6. Although Arkaifie later claimed in her deposition that she only agreed with Flynn "to get her off the phone," Arkaifie does not deny making the statement.

To determine whether comments in the workplace constitute "direct evidence" of discrimination, or only "stray remarks," the court must consider whether the comments are (1) related to the plaintiff's protected characteristics; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. *Etienne v. Spanish Lake Truck & Casino Plaza*, L.L.C., 778 F.3d 473, 476 (5th Cir. 2015). The dominant consideration in this analysis is whether the comments show, "without inference or presumption, that [sex] was a basis in employment decisions" in the plaintiff's workplace. *Id.* (quoting *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 993 (5th Cir. 2005)).

NTC does not dispute that Arkaifie's statement fulfills all of the above factors except for factor three. NTC contends Arkaifie's statement was just a "stray remark" arguing that "it was not made by an individual with authority of the employment decision." Dkt. No. 39 at 6. However, NTC concedes in the next sentence that "Arkaifie might have been involved in the decision to assign backup teller duties." *Id.* NTC also admitted in its Motion for Summary Judgment that Arkaifie "participated in the decision" to assign backup teller duties to Flynn. See Dkt. No. 29 at 10. Moreover, there is no dispute that Arkaifie was Flynn's direct supervisor and that she was involved in the decision to assign Flynn teller duties and to reprimand Flynn. The Court finds that Flynn has presented sufficient evidence to at least create a fact issue with regard to whether Arkaifie's comments that Flynn was only assigned teller duties because she is a woman constitutes direct

evidence of discrimination. *See Thompson v. Erickson*, 1998 WL 94823 at * 5 (N.D. Miss. Jan. 7, 1998) (finding that comments that female officer was transferred because she was a woman was direct evidence of discrimination).

### 3. Adverse Employment Actions

While Flynn need not establish a prima facie claim of employment discrimination since she has presented direct evidence of discrimination, she still must demonstrate that she was subject to an "adverse employment action" in order to prove her claim under Title VII. *See Stone v. Louisiana Dep't. of Revenue*, 590 F. App'x 332, 339 (5th Cir. 2014) ("Although Stone need not plead a prima facie case, she is not exempt from her obligation to allege facts sufficient to state all the *elements* of her claim.") (internal citation omitted), *cert. denied*, 135 S.Ct. 2814 (2015); *Cannon v. St. Paul Fire & Marine Ins. Co.*, 2005 WL 1107372, at *3 (N.D. Tex. May 6, 2005) ("[E]ven if Cannon produces direct evidence of discrimination, he must have been subject to an adverse employment action to sue under either Title VII or the ADEA."). An "adverse employment action" is "a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014). The Fifth Circuit has held that "adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* (citing *McCoy*, 492 F.3d at 560). The Fifth Circuit has also held "that a transfer or reassignment can be the equivalent of a demotion, and thus constitute an adverse employment action." *Id.*

Flynn claims that she was subject to two adverse employment actions: (1) forcing her take on entry-level teller duties which was the equivalent of a demotion, and (2) constructively discharging her by forcing her to choose between resignation and termination. Flynn argues that the

9

assignment of entry-level teller duties to a fourteen-year veteran trust administrator was the equivalent of a demotion. NTC argues that the assignment of teller duties could not constitute an adverse employment action because "Flynn retained her salary, duties and benefits." Dkt. No. 29 at 10. However, "[t]o be the equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id.* (quoting *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir.1999)).

The Court finds that Flynn has submitted enough evidence to create a genuine issue of fact as to whether the assignment of teller duties to a person in her position was the equivalent of a demotion. Flynn has submitted the official job descriptions showing that Flynn's position of APIPM had much more significant duties, knowledge, skill and experience requirements than the teller position. Exh. 57 to Dkt. No. 31. Flynn has also presented the testimony of Susan McGee, a former NTC employee and 35-year veteran in the financial industry, who testified that assigning teller duties to a bank employee in Flynn's position would be considered a demotion. Exh. 54 to Dkt. No. 31 at 30-36. Flynn has also presented the testimony of former NTC employee Donna Day, who stated that assigning Flynn to the teller position would be a demotion. Exh. 55 to Dkt. No. 31 at 35-36. In addition, Plaintiff's expert witness, Randall James, testified that assigning teller duties to an employee in Flynn's position would constitute a reduction in authority, a loss of prestige and would be perceived as a demotion. Exh. 50 to Dkt. No.31 at 10-11.

Based upon the foregoing, the Court finds that Flynn has submitted enough evidence to create a genuine issue of fact as to whether the assignment of teller duties to Flynn was the equivalent of a demotion and was, therefore, an adverse employment action. *See Bouvier v. Northrup Grumman*

10

*Ship Sys.*, Inc., 350 F. App'x 917, 922 (5th Cir. 2009) (finding sufficient evidence that the transfer to crane rigger was an adverse employment action where evidence showed that transfer involved a loss of prestige and responsibility); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004) (transfer qualifies as an adverse employment action if it makes the job "objectively worse." ); *Sharp*, 164 F.3d at 933 ("The jury could have viewed transferring from the elite Mounted Patrol to a teaching post at the Police Academy to be, objectively, a demotion."); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996) (recognizing as demotions the reassignment of two police officers from the Intelligence Unit to night patrol because the Intelligence Unit positions "were more prestigious, had better working hours, and were more interesting than night patrol" and "few officers voluntarily transferred from the Intelligence Unit to night patrol and other officers had been so transferred as punishment"), *cert. denied*, 522 U.S. 816 (1997); *Sims v. America's Family Dental LLP,* 2017 WL 1397854 at *8 (S.D. Houston April 19, 2017) (denying summary judgment where plaintiff presented evidence that transfer to dental assistant to hygienist assistant was less prestigious and thus an adverse employment action); *Williams v. E.I. du Pont de Nemours and Co.*, 180 F. Supp.3d 451, 457 (M.D. La. 2016) (denying summary judgment where plaintiff presented sufficient facts showing that new job shift was objectively worse and less prestigious than prior position).

The Court also finds that Flynn has presented sufficient summary judgment evidence to create a fact issue as to whether she suffered an adverse employment action by being constructively discharged. "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (quoting *Pennsylvania State Police v.*

*Suders*, 542 U.S. 129, 141(2004). "When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." *Id.* at 1776-77. To determine if a reasonable employee would feel compelled to resign, courts consider the following factors, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011).

As discussed above, the assignment of teller duties could be perceived as a demotion or at the very least menial or degrading work to a bank employee in Flynn's position. In addition, Flynn contends that she was faced with the decision to either perform the teller job duties or resign. Flynn contends that she believed that the assignment of teller duties while performing her other job duties was improper and unlawful. Specifically, she was concerned about performing the role of teller because of risk management and compliance issues since she had not been trained as a teller. In addition, she was concerned that performing the role of teller while also working as a TRM and APIPM would violate federal banking regulations regarding separation of duties, which could lead to fines or sanctions to herself or the bank. Flynn's supervisor, Karene Arkaifie, also agreed with Flynn and told her that the assignment of teller duties was not a good idea and had contacted risk management regarding the matter. Exh, 1 to Dkt. 31 at 183-86. Former NTC employee Susan McGee also testified that "it would be improper and inconsistent with federal regulations for an employee to perform Teller duties while serving as a Trust Relationship Manager and Associate Personal Investment Portfolio Manager." Exh. 49 to Dkt. No. 31 at 2. Ms. McGee further opined

that "I believe that a reasonable employee at Northern Trust working as a Trust Relationship Manager and Associate Personal Investment Portfolio Manager would feel compelled to resign if assigned CSR/Teller duties at the same time as performing the other functions of her job." *Id*. at 3. Flynn's expert witness also testified that it would be improper for a bank employee who worked on a team that sold NonDeposit Investment Products to perform teller duties. Exh. 50 to Dkt. No. 31 at 6-9. He also testified that such a requirement would place that employee in contradictory roles, and that the employee would be subject to a finding of non-compliance with banking regulations and bank policies and could be subject to fines and penalties for violating applicable laws. *Id*. at 9.

Thus, Flynn contends that she was faced with the decision to either perform the teller duties or face termination or resign from her position. Indeed, her manager, Frank Chavez, testified that he specifically told Flynn that her job would be at risk if she did not perform the teller duties. Exh. 31 to Dkt. No. 31 at 78. Thus, Flynn contends that she was forced to resign. The Court finds that this evidence is sufficient to create a fact issue with regard to whether Flynn was constructively discharged. *See Burks v. Oklahoma Pub. Co.*, 81 F.3d 975, 978 (10th Cir. 1996) (recognizing that employee can prove constructive discharge by showing that she faced choice between resigning or being fired), *cert. denied*, 519 U.S. 931 (1996); *Jenkins v. State of LA., Thru Dep't of Corrections*, 874 F.2d 992, 996 (5th Cir. 1989) (stating that constructive discharge can be proven with evidence that plaintiff-employee was given ultimatum), *cert. denied*, 493 U.S. 1059 (1990).

    4.    <u>NTC's explanation</u>

Because Flynn has presented direct evidence of discrimination, the burden shifts to NTC to show that it would have made the same employment decision absent evidence of discrimination. *Etienne*, 778 F.3d at 477. NTC did not address this issue in their briefs as it merely argued that

13

Flynn had not presented direct evidence of discrimination. However, in the context of articulating a legitimate, nondiscriminatory reason for assigning Flynn teller duties, NTC argues that Flynn was assigned those duties because she was "the logical choice" because her desk was in the front of the office and she was the only member of the CSS team in the Austin office. Dkt. No. 29 at 10-11. "But to prevail on summary judgment, [NTC] must do more than merely identify a legitimate basis for its decision—it must show that any reasonable jury would conclude that it would have made the same decision absent the discrimination." *Etienne*, 778 F.3d at 477. NTC has failed to carry its burden in this regard. In light of the direct evidence of discrimination and the fact that Flynn was replaced by a man who was not required to perform teller duties, the Court finds that Flynn has presented sufficient evidence to create a fact issue on her sex discrimination claim. Accordingly, the Magistrate Court will recommend that the District Court deny summary judgment with regard to this claim.

**B.      Retaliation Claim**

To state a claim for retaliation in violation of Title VII the employee must produce evidence: (1) that she participated in an activity protected by Title VII, (2) that her employer took an adverse employment action against her, and (3) that there is a causal connection between the adverse employment action and the protected activity. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). This establishes the employee's prima facie case, and gives "rise to an inference of retaliation." *Id*. The burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action. *Id.* Once the employer articulates a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the employee to "demonstrate that the employer's [stated] reason is actually a pretext for retaliation." *Feist v. La.,*

*Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (*quoting LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007)). In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that "the adverse [employment] action would not have occurred 'but for'" the employee's decision to engage in an activity protected by Title VII. *Id.*

Flynn has clearly stated a prima facie claim of retaliation. It is undisputed that Flynn engaged in protective activity when she complained to her supervisors beginning in January 2014 about Greg Yokum. The following month, on February 10, 2014, Flynn received the first written warning she had ever received in her 14-year tenure with the company. Eleven days after her written warning, NTC assigned Flynn backup teller duties despite her stated objections. Two months later, Flynn received another written warning notifying her that she would be terminated if she did not comply with the recommendations and that she would be restricted from any promotions or new educational assistance requests during her warning period. Exh. 22 to Dkt. No. 31. On June 17, 2017, Chavez and Arkaifie called Flynn and told her to either perform the teller duties or face termination. Flynn was also informed that she could no longer work at home on Fridays. Flynn resigned the following morning.

The Court finds that the above evidence is sufficient to create a fact question regarding whether the actions taken against Flynn were the result of her engaging in the protected activity of complaining about Yokum's actions. Specifically, the Court has already determined that Flynn has provided sufficient evidence to create a fact issue with regard to whether assigning Flynn teller duties is an adverse employment action and whether she was constructively discharged. Further a jury could infer from the evidence that NTC retaliated against Flynn after she complained about Yokum

15

by giving her written warnings and reprimands.[1] *See Stone*, 590 F. App'x at 341 (finding that employer retaliated against employee after she engaged in protected activity by limiting her telecommuting privileges, hindering her professional development and impeding her physical transfer to a new office); *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) ("[Plaintiff] suffered a materially adverse action in the form of the unfavorable performance review she received (that affected her eligibility for a merit pay increase) after she complained of racial discrimination."); *Cones v. Duke Energy Corp.*, 367 F. Supp.2d 1092, 1199-00 (S.D. Tex. 2005) (finding that changes in employee's job status including being reduced to menial and administerial tasks that were not commensurate with her experience was an adverse employment action).

The timing with regard to Flynn's complaint in relation to the negative actions is enough to raise a fact dispute on causation. "For purpose of the *prima facie* case, causation is inferred with nothing more than proof that the employer knew about the protected activity, along with a temporal relationship between that knowledge and the adverse consequences." *Id*. Lastly, the Court finds that this evidence could lead a reasonable fact-finder to conclude that "the adverse [employment] action would not have occurred 'but for'" the employee's decision to engage in an activity protected by Title VII. *Feist*, 730 F.3d at 454. Accordingly, the Court will recommend that the District Judge deny summary judgment with regard to Flynn's retaliation claim as well.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant The Northern Trust Company's Motion for Summary Judgment (Dkt. No. 29) in its entirety.

---

[1] While NTC contends that there is no evidence showing that Chavez knew of Flynn's protected activity, it is undisputed that Karene Arkaifie obviously did. Moreover, Flynn has provided sufficient evidence to create a fact issue with regard to whether Chavez was informed of Flynn's complaints.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 3rd day of November, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE